IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Alkarim P. Lakhani,                    :              Case No. 3:10 CV 00011

     Plaintiff,                       :

v.                                     :

Seneca County Sheriff's Office, et al.,  :          **MAGISTRATE'S REPORT AND
                                                     RECOMMENDATION**

     Defendants.                      :

This case, filed pursuant to 42 U. S. C. § 1983, was referred to the undersigned Magistrate for

report and recommendation.  Pending are Plaintiff's Motions to Proceed In Forma Pauperis (Docket No.

52, 58 & 60), Plaintiff's Motion to Reconsider Appointment of Counsel (Docket No. 53), Plaintiff's

Motion to Subpena [sic] Records (Docket No. 57), Defendants' Motion for Summary Judgment and

Plaintiff' Response and Amended Response (Docket Nos. 39, 51 & 59).  For the reasons that follow, the

Magistrate recommends that the Court deny as moot all Motions to Proceed In Forma Pauperis, deny the

Motion to Reconsider Appointment of Counsel, deny the Motion to Subpena [sic] Records and grant the

Motion for Summary Judgment.

## I. THE PARTIES.

Plaintiff is a Pakistani subject.  He was detained in the Seneca County Jail and the Mahoning

County Justice Center pending transfer to the Buffalo Federal Detention Facility in Batavia, New York (Docket No. 1, ¶ 1 & p. 6 of 19; Docket No. 13).

The Seneca County Sheriff's Office (Sheriff's Office) has its principal place of operation in Tiffin, Ohio.  Www.senecacounty.so.org.

The Sheriff, Thomas G. Steyer (Steyer), is the chief law enforcement officer in Seneca County, Ohio.  Defendant Steyer is sued in his official and individual capacities (Docket No. 14, ¶ 3).

Rebecca Clouse (Clouse) is a licensed practical nurse employed by the Seneca County, Ohio Jail. Defendant Clouse is sued in her official and individual capacities (Docket No. 14, ¶ 6; Docket No. 39, Exhibit 4).

Laurie Thompson (Thompson) is a correction's officer and Immigration and Customs Enforcement (ICE) liaison at the Seneca County Jail.  Defendant Thompson is sued in her official and individual capacities (Docket No. 14, ¶ 5).

Lieutenant Cunningham (Cunningham) is a Seneca County Sheriff's Department employee.  He is sued in his official and individual capacities (Docket No. 14, ¶ 7).

Captain Coffman is the day-to-day supervisor of the Seneca County Jail.  He is sued in his official and individual capacities (Docket No. 14, ¶ 8).

Mr. Pahl is a Seneca County Jail Corrections Officer.  He is sued in his official and individual capacities (Docket No. 14, ¶ 9).

Joseph Panuto is the supervisor of the day shift at Seneca County Jail.  He is sued in his official and individual capacities (Docket No. 14, ¶ 4).

## II. JURISDICTION.

This Court has jurisdiction over this action pursuant to 28 U. S. C. § 1331 and 1343.  Venue is

proper in the Northern District of Ohio under 28 U. S. C. § 1391.

### III. FACTUAL & PROCEDURAL BACKGROUND.

Plaintiff asserted the following facts in his Amended Complaint.

On September 8, 2008, Plaintiff, who had been diagnosed with attention deficit hyperactivity disorder, depression and moderate levels of anxiety, was arrested on immigration charges by the Bureau of Immigration and Customs Enforcement (ICE), a subagency of the Department of Homeland Security. He was immediately detained in the Seneca County Jail. During the course of his stay at the Seneca County Jail, Plaintiff was subjected to insensitive and harsh treatment ranging from shouting and cursing to an environment which created fear, anger and frustration. When Plaintiff voiced opposition to the treatment and conditions of confinement, he was moved to an undesirable block in the institution and subjected to surprise searches.

On October 8, 2008, the Seneca County Sheriff's Department medical staff unilaterally substituted Venlafaxin for the prescribed dosage of Cymbalta®. Plaintiff complained that the replacement therapy was causing periods of painful episodes of acute anxiety followed by periods of deep depression.

On or about October 29, 2008, Plaintiff filed a grievance with the jail administrator, requesting that the medical staff discontinue the Venlafaxine and resume Cymbalta® and Vytorin (a cholesterol medication). Defendant Cunningham conducted an informal discussion of the allegations in the grievance. Defendant Cunningham denied the request.

Plaintiff was moved to the Medina County Jail on November 12, 2008. There he was provided with the prescribed medications. In fact, the dosage of Cymbalta® was increased.

Plaintiff was returned to the Seneca County Jail on January 23, 2009, and the harassment resumed. He was subjected to *inter alia*, groping during body searches and visual surveillance while bathing in open

showers and relieving himself.  Defendant Clouse forced Plaintiff to elect taking Venlafaxine or no medication.  Plaintiff elected to take no medication.  Eventually, Plaintiff's friends purchased Cymbalta® and forwarded it to him.  Plaintiff complained to an ICE agent but no action was taken to correct such treatment.

In June 2009, the harassment intensified.  The guard mistreated him and Caucasian inmates taunted him about his ethnicity.  Once his truthfulness about taking a shower was questioned.  When Plaintiff suggested that his behavior bordered on sexual harassment, Mr. Best retracted his threat to place Plaintiff in lock down.  Several days later, Mr. Pahl visually surveyed Plaintiff's body while he showered.  Mr. Pahl observed Plaintiff using the toilet and then stood there to observe Plaintiff's nudity.

Plaintiff reported these incidents to a ICE agent.  The ICE agent represented that he would submit the incident report to his boss.

The incidents of retaliation related to Plaintiff's Muslim faith beliefs.  Christian detainees were allowed to worship as a congregation four times weekly.  Muslin detainees were deprived of the opportunity to assemble for afternoon prayer on Friday.  Christian detainees were given special meals and their holiday customs were observed.  Muslims were refused their requests to celebrate holidays collectively (Docket No. 14, pp. 5-10 of 22).

On October 8, 2009, Plaintiff filed a complaint in this Court against ICE.  United States District Court Judge James G. Carr dismissed the complaint pursuant to 28 U. S. C. § 1915A (Case No. 3:09 CV 2337, Docket Nos. 2 & 3).  Plaintiff claims that in response to exercising these rights, Defendants withheld medication prescribed to control the symptoms of ADD.  On October 18, 2009, a verbal alteration ensued due to high anxiety.  Although Plaintiff attempted to explain that he was not medicated when the altercation occurred, he was placed in lock down.  While in lock down, Plaintiff was denied access to the law library,

4

legal materials, legal research requests and photocopying.

On October 20, 2009, Plaintiff suffered severe chest pain and headaches due to elevated levels of anxiety caused by missed doses of medication. Plaintiff complained to Defendant Steyer and on October 22, 2009, the medication was provided. Plaintiff requested an increase in the dosage of medication but Defendant Clouse refused to change the prescription or consult with a treating physician. However Plaintiff was offered Tylenol® for headache relief (Docket No. 15, pp. 10-13 of 22).

Beginning in December 2009, Defendant Thompson reiterated that Plaintiff would not be provided the needed material to file an appeal in the Ninth District Court of Appeals. Prior to an inspection by MGT of America, a management research and consulting company, all of Plaintiff's grievances filed in an automated Cobra kiosk system were "closed out." The law library also underwent several updates prior to the inspection (Docket No. 14, p. 14-15 of 22).

In January 2010, Plaintiff filed a claim in this Court. He amended his claim in June 2010. Plaintiff appealed to the United States Court of Appeals for the Sixth Circuit an order granting in part, Defendants' Motion to Strike, denying Plaintiff's Motion for Reconsideration, denying Plaintiff's Motion to Add Documents and denying Plaintiff's Motion for Production of Medical Records (Docket No. 38). The Court dismissed the appeal on the basis that the review of a magistrate judge's ruling lies with the district court judge (Docket No. 55). This case is ripe for review on the merits.

### IV. MOTIONS TO PROCEED IN FORMA PAUPERIS
(Docket Nos. 52, 58 & 60).

Plaintiff argues that since his detention in 2008, he has been without financial resources from which to pay the costs of litigation. He requests that the Court permit him to proceed with his case in forma pauperis.

Plaintiff has filed five Motions to Proceed In Forma Pauperis (Docket Nos. 3, 6, 52, 58 & 60). In

5

the Memorandum Opinion and Order (Docket No. 9) the Court granted the Motion to Proceed in Forma Pauperis (Docket No. 6) and denied as moot another Motion to Proceed in Forma Pauperis (Docket No. 3).  The pending Motions to Proceed In forma Pauperis (Docket Nos. 52, 58 & 60) are duplicitous and therefore denied as moot.

### V. MOTION TO RECONSIDER APPOINTMENT OF COUNSEL.
(Docket No. 53)

Plaintiff seeks an order reconsidering this Court's order denying his request for appointment of counsel (Docket No. 9).

Although the Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, the authority for a district court to hear such motions is found in both the common law and in Rule 54(b) of the FEDERAL RULES OF CIVIL PROCEDURE.  *Bonar v. Romano,* 2010 WL 1404305, *1 (S. D. Ohio 2010) (*citing Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 952 (6th Cir. 2004); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 103 S.Ct. 927, 935 (1983) ("Every order short of a final decree is subject to reopening at the discretion of the district judge"); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ( "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.") Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence; or, (3) a need to correct a clear error or prevent manifest injustice.  *Id.* (*citing Rodriguez,* at 959; *Reich v. Hall Holding Company*, 990 F. Supp. 955, 965 (N. D. Ohio 1998)).  However, a motion for reconsideration "should not be used to re-litigate issues previously considered."  *Id.* (*citing American Marietta . v. Essroc Cement*, 59 Fed. Appx. 66, 671 (6th Cir. 2003)).

Plaintiff has not pointed to a change in controlling law that would warrant reconsideration of the

decision to deny the appointment of counsel in a civil case.  Neither has Plaintiff presented new evidence that would justify the appointment of counsel in a civil case.  There is no citation of a clear error of law that the Court needs to correct since it is well established that Plaintiff has no constitutional right to the appointment of counsel in a civil proceeding.  *See Lavado v. Keohane*, 992 F. 2d 601, 605-606 (6th Cir. 1993) (*citing Mekdeci v. Merrell National Laboratories*, 711 F. 2d 1510, 1522 n. 19 (11th Cir. 1983)). Without commenting on the merits or outcome of Plaintiff's claims, the Magistrate cannot find that the failure to appoint counsel will result in manifest injustice.  Plaintiff is articulate, has made legally cognizable claims, has conducted extensive research, has applied relevant case law to his claims and has complied with the procedural rules in presenting his case to the Court.  Reconsideration of the interlocutory decision denying the appointment of counsel is not warranted.

### VI. MOTION TO SUBPENA [SIC] RECORDS.
(Docket No. 57).

Plaintiff requests that the Court subpena [sic] Defendants' records from this case, all medical records, all grievances filed on the COBRA kiosk system during Plaintiff's tenure at the Seneca County Jail,  certified copies of all handwritten grievances by the Plaintiff in conjunction with other jail detainees and certified copies of all incident reports, videos of the incidents and record of follow through by the jail administrator.  The Magistrate construes Plaintiff's request as a motion to compel Defendants to produce documents that are within their possession and control.

Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE provides for the discovery of documents in the "possession, custody, or control" of a party, provided that the documents requested fall "within the scope of Rule 26(b)."  Rule 26(b), in turn, provides that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.  FED. R. CIV. P. 26(b)(1) (Thomson Reuters 2011).  Rule 37 of the FEDERAL RULES permits the court to compel a party resisting discovery to

7

comply with the other party's requests.  FED. R. CIV. P. 37 (Thomson Reuters 2011).  A party may file a motion to compel discovery, provided that the motion to compel includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to respond to the request.  FED. R. CIV. P. 37(a)(1) (Thomson Reuters 2011).

Notwithstanding that Plaintiff failed to advise the Court that he served Defendants with a request for production of documents under FED. R. CIV. P. 34, Plaintiff also failed to provide certification that he conferred with Defendants in good faith to obtain the information he requested.  This prerequisite to seeking an order compelling Defendants to produce documents has not been met in this case.  The Magistrate, therefore, recommends that the Court deny the Motion.

<strong>VII. MOTION FOR SUMMARY JUDGMENT.<br>(DOCKET NO. 39).</strong>

**A.    PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.**

Seeking an award of punitive and compensatory damages under Sections 1983, 1985 and 1986, the Plaintiff claims that:

- He was deprived of the rights secured him under the First Amendment, specifically the right to practice his religion and congregate with other Muslims to pray every Friday by the Seneca County Sheriff's Office and Defendants Steyer, Panuto and Thompson.
- Defendant Steyer deprived him of his Fifth Amendment right to due process by locking him down as a result of a psychiatric meltdown.
- Defendant Clouse was deliberately indifferent to providing him the appropriate medication.
- Defendant Panuto conspired with other officers at the jail to deny his medication.
- Defendant Thompson denied him access to the courts.
- Defendant Clouse failed to provide him with medication; consequently, he started to experience repeated anxiety attacks, severe headaches, occasional panic attacks and lumbar pain.
- Defendant Cunningham threatened him by subjecting him to cruel and unusual punishment.
- Defendant Coffman physically attacked him subjecting him to cruel and unusual punishment.
- Defendant Pahl engaged in sexual misconduct, subjecting him to cruel and unusual punishment.

8

**B.**     **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**.

In the Motion for Summary Judgment, Defendants present the following arguments:

- Plaintiff's claims against Seneca County, the Seneca County Sheriff's Office and Sheriff Steyer in his official capacity fail as a matter of law.
- Plaintiff's *Monell* claim fails because there is no evidence of a policy or custom of Seneca County to deprive constitutional rights of inmates/detainees of the county jail.
- The Seneca County Sheriff's Office is not *sui juris*.
- Plaintiff's claim alleging "deliberate indifference" fails as a matter of law.
- Plaintiff has failed to perfect service on Seneca County, Seneca County Sheriff's Office, and former Seneca County Sheriff Thomas Steyer.
- Defendants are entitled to summary judgment on Plaintiff's Section 1983 Claims as Plaintiff's Eighth and Fourteenth Amendment rights were not violated.
- Defendants did not deny Plaintiff meaningful access to the courts.
- Defendants did not place a substantial burden on Plaintiff's religious exercise.
- Any Equal Protection claim asserted by Plaintiff fails as a matter of law.
- Defendants are entitled to qualified immunity from liability for Plaintiff's claims against them in their individual capacities.
- Any claims of Plaintiff that arise under 42 U.S.C. § 1985 and § 1986 fail as a matter of law.
- Plaintiff has failed to exhaust his administrative remedies.

**C.**     **THE MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW.**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its

9

pleadings or merely reassert its previous allegations.  *Id.*  It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position.  *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor.  *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)).  Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.  *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

**D.**     **ANALYSIS OF THE MOTION FOR SUMMARY JUDGMENT**.

**1.**     **SECTION 1983 STANDARD.**

Section 1983 is the vehicle used to provide a remedy for constitutional violations committed by state actors.  In order to prevail in a Section 1983 action, a plaintiff must establish that:

(1)     the conduct complained of was committed by a person acting under color of state law, and
(2)     this conduct deprived plaintiff of a right secured by the Constitution

*Moorer v. Copley Township*, 98 F. Supp.2d 838, 843 (N. D. Ohio 2000) (*citing Parratt v. Taylor,* 101 S.Ct. 1908, 1913-1914 (1981)).

**a.**     **SHERIFF'S OFFICE.**

A county sheriff's office is not a legal entity capable of being sued for purposes of Section 1983.

10

*Yahnke v. Nixon,* 2010 WL 3420650, *1 (N. D. Ohio 2010) (*citing Petty v. County of Franklin, Ohio*, 478 F.3d 341 (6th Cir. 2007); *Brett v. Wallace*, 107 F. Supp.2d 949 (S. D. Ohio 2000) ("[T]he Sheriff's Office is not a proper legal entity and, therefore, is not subject to suit or liability under 42 U.S.C. § 1983."); *Rhodes v. McDannel*, 945 F.2d 117 (6th Cir. 1991) ("The Sheriff's Department is not a legal entity subject to suit."); *Elkins v. Summit County, Ohio*, 2008 WL 622038 (N. D. Ohio 2008) (In an action for a § 1983 violation and related state law violations, the court recognized that administrative units of a local government, such as a municipal police department, are not sui juris because they cannot be sued absent positive statutory authority and Ohio does not have such a law).

Defendant Sheriff's Office moves to dismiss it as a party on the basis that as an administrative arm of the local government, is it not *sui juris*. In other words, as a matter of law Defendant Sheriff's Office cannot be sued. The Amended Complaint names the Seneca County Sheriff and identifies the Seneca County Sheriff's Office as his employer. The Office is not subject to suit; therefore, the Magistrate recommends that the Court dismiss Defendant Sheriff's Office as a party.

b.    **THE SHERIFF**

A sheriff or other county official acts on behalf of the entity he or she represents. *Thigpen v. Reid,* 2010 WL 5127649, *2 (N. D. Ohio 2010) (*citing Newman v. Evans*, 2009 WL 814616 * 5 (E. D. Mich. 2009)). When sued in his or her official capacity under Section 1983, the suit is actually against the county. *Id.* (*citing Monell v. Department of Social Services of City of New York*, 98 S.Ct. 2018, 2036 n. 55 (1978)). In a case against the county, a plaintiff must show that the alleged violation of his or her constitutional rights resulted from acts representing official policy or custom adopted by the city. *Id.* (*citing Monell*, 98 S. Ct. at 2035-2036; *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir. 1989); *Moore v. Chattanooga Police Department*, 2008 WL 3896114 * 5 (E. D. Tenn. 2008)). The Sixth

11

Circuit held in *Hays v. Jefferson County, Kentucky*, 668 F.2d 869, 874 (6th Cir. 1982), that a supervisor must have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.  *Id.*

Plaintiff has not alleged a violation of any custom or policy.  Defendant Steyer cannot be held liable based on the theory of respondeat superior as Plaintiff failed to demonstrate that Defendant Steyer authorized, approved, or knowingly acquiesced in unconstitutional conduct.  The claims against Defendant Steyer in his official capacity--failure to afford Plaintiff an opportunity to practice his religion and failure to provide due process by placing him in lock down--must be dismissed.

       c.    **FIRST AMENDMENT CLAIM.**

The First Amendment states in pertinent part:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." *Yaacov v. Collins,* 649 F. Supp.2d 679, 686 (N. D. Ohio 2009) (*citing* U. S. CONST., amend. 1)  The Fourteenth Amendment incorporates the Establishment Clause and the Free Exercise Clause so as to be enforced under the color of state law.  *Id.* (*citing Cantwell v. State of Connecticut*, 60 S.Ct. 900, 903 (1940).  The Civil Rights Act § 1983 makes legally liable any person who under the color of state law deprives any person within the jurisdiction of the United States to the deprivation of any rights secured by the Constitution.  *Id.* (*citing* 42 U.S.C. § 1983).

Prisoners filing claims under Section 1983 do retain their constitutional rights, but the exercise of those rights is limited by their incarceration and conflicting legitimate penological interests such as maintenance of prison security.  *Id.* (*citing O'Lone v. Estate of Shabazz*, 107 S.Ct. 2400, 347-348 (1987); *Pell v. Procunier*, 94 S.Ct. 2800, 2804 (1974); *Turner v. Safley*, 107 S.Ct. 2254, 2261-2262 (1987)).  Accordingly, prisoners retain First Amendment rights that are consistent with their status as prisoners or

legitimate penological interests, *Id.* (*citing Pell*, 94 S.Ct. at 2804), and the Supreme Court has established a deferential rational basis standard for reviewing prison policy:  If the policy reasonably relates to a legitimate penological interest, then it is constitutional.  *Id.* (*citing Turner*, 107 S.Ct. at 2261).  Balancing Plaintiff's religious beliefs and his practices with the policies of the detention facility, the institution had a legitimate interest in maintaining institutional security and internal order.  Defendants aver that Plaintiff was free to worship in his cell and he was allowed to congregate and pray on Friday at 1:30 P.M. provided there were no security breaches (Docket 39, Exhibit 1, ¶ 9; Exhibit 2, ¶ 6, Exhibit 3, ¶ 6).  Thus, Defendants have borne the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.

Once the burden shifted, Plaintiff failed to present concrete evidentiary material to refute Defendants' claims or show specific facts that create a genuine issue for trial.  There is no evidence that Defendants exaggerated their response to the safety considerations by limiting the frequency with which Friday prayers were conducted.  Even if he was not permitted to congregate **every** Friday, Plaintiff retained the right to pray and practice his religion without other congregants.  The determination that Plaintiff could not congregate **every** Friday only limited but did no eliminate his rights under the First Amendment.

### d.     FIFTH AMENDMENT CLAIM.

The Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law.  It is well established that Fifth Amendment Due Process claims are analyzed

13

exactly like Fourteenth Amendment due process claims.  *Mathews v. Eldridge*, 96 S. Ct. 893, 901 (1976).  However, the Fifth Amendment constrains the power of the federal government to deprive a person of life, liberty or property without due process of law.  *Pierce v. Ohio Department of Rehabilitation and Corrections*, 284 F. Supp. 2d 811, 828 fn. 16 (N. D. Ohio 2003).  To state a viable Fifth Amendment claim, a plaintiff must identify a federal official or entity as a defendant.  *Id.*

Plaintiff premises the claim that he acted inappropriately because Defendants failed to prescribe appropriate drug therapy.  However, there is no  identifiable federal official or entity named in this case.  Accordingly, there is no viable Fifth Amendment claim against any Defendant in his or her official or individual capacities.   The allegation that Plaintiff claims arises under the Fifth Amendment is appropriately analyzed under the Eighth Amendment claim of deliberate indifference to his medical needs.

e.    EIGHT AMENDMENT CLAIMS.

1.    **Deliberate Indifference to medical treatment**.

The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a Section 1983 claim of deliberate indifference to serious medical needs.  *Phillips v. Roane County, Tennessee*, 534 F.3d 531, 539 (6th Cir. 2008).  An official's deliberate indifference violates an inmate's rights "[w]hen the indifference is manifested by  . . .  prison guards in intentionally denying or delaying access to medical care" for a serious medical need.  *Id.* (*citing Estelle v. Gamble*, 97 S.Ct. 285, 291 (1976)).

A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components.  *Id.*  The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need.  *Id.* (*citing Farmer v. Brennan*, 114 S.Ct. 1970, 1977 (1994)).  The Sixth Circuit Court of Appeals has previously explained that "where a plaintiff's claims arise

14

from an injury 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention, . . . it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.' " *Id.* at 539-540 (*citing Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004) (citation omitted)).

In contrast, the subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did, in fact, draw the inference, and that he then disregarded that risk." *Id.* (*citing Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (*citing Farmer*, 114 S.Ct. at 1978-1979)). Although the latter, subjective standard "is meant to prevent the constitutionalization of medical malpractice claims," a plaintiff need not show that the officer acted with the specific intent to cause harm. *Id.* Indeed, " 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.' " *Id.* (*quoting Farmer*, 114 S.Ct. at 1978). Officials, of course, do not readily admit this subjective component, so "it [is] permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge." *Id*.

Defendant Clouse averred that she administered prescription medication to inmates with valid prescriptions and she was aware that Plaintiff had a prescription for Cymbalta®. However, the staff physician noted that Cymbalta® was costly and therefore not on the ICE formulary. An acceptable substitute, Effexor, was prescribed. Plaintiff refused to take it. He was given the option to obtain Cymbalta® from family members. She called in Plaintiff's prescription for Cymbalta® to a local pharmacy and a family friend would deliver it to the jail. Plaintiff did not go without Cymbalta® for a long period of time. Plaintiff was also given his prescription of Concerta directly (Docket No. 39, Exhibit 4, ¶s 2-10).

Plaintiff contends, generally, that the failure to provide him the medication caused several side

15

effects including repeated anxiety attacks, headaches and lumbar pain. Plaintiff further argues that failure to give him this medication was a violation of his constitutional rights under the Eighth Amendment.

The Magistrate concludes that the facts when viewed in a light most favorable to Plaintiff and the evidence shows that Defendants knew of Plaintiff's serious medical needs and offered appropriate treatment. It is apparent that Plaintiff disagreed with the course of treatment offered by the institution. However, Plaintiff neither alleges nor proves that he was denied medical treatment. Defendant Clouse managed his care under the direction of Dr. Fitzpatrick. The objective component of the deliberate indifference test is met.

Turning to the subjective component, Plaintiff has failed to allege facts which infer that Defendants disregarded the risk of the failure to medicate Plaintiff. To the contrary, Defendant Clouse arranged for Plaintiff to obtain the medication that had been prescribed before he was detained. Given the evidence before the Court, the Magistrate does not find that Defendants disregarded Plaintiff's need for medical treatment.

### 2. Physical Force

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain," including inflictions of pain that "are totally without penological justification." *Lockett v. Suardini,* 526 F.3d 866, 875 (6th Cir. 2008) (*citing Rhodes v. Chapman*, 101 S.Ct. 2392, 2398-2399 (1981) (citations and internal quotation marks omitted). In the prison context, good faith use of physical force may be necessary to maintain prison security and discipline. *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). The Supreme Court explained that when a prison security measure is undertaken to resolve a disturbance that no doubt poses significant risks to the safety of inmates and prison staff, the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turned

16

on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* (*citing Whitley v. Albers*, 106 S.Ct. 1078, 1084-1085 (1986) (internal quotation marks omitted)).  Furthermore, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.' " *Id.* (*citing Hudson v. McMillian*, 112 S.Ct. 995, 999, 1000 (1992) (holding that the extent of the defendant's injuries, including bruises, swelling, loosened teeth, and a cracked dental plate, were sufficiently serious for his § 1983 claim to survive a motion to dismiss) (*quoting Whitley*, *supra*, 106 S.Ct. at 1085)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (*citing Hudson*, *supra*, 112 S. Ct. at 1000-1001) (citations and internal quotation marks omitted).  An "absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id*. (*citing Hudson*, *supra*, at 7, 112 S.Ct. at 999).  This analysis "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable post hoc judicial second-guessing." *Id.* (*citing Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir. 1986); *see also Williams*, *supra*, 981 F.2d at 906 ("[A]ll the facts and circumstances surrounding the application of force must be scrutinized and weighed.").

In the instant case, Defendants identified those portions of the record that demonstrate the absence of a genuine issue of material fact.  Specifically, Defendant Cunningham averred that he never physically assaulted Plaintiff (Docket No. 39, Exhibit 7, pp. 2 of 2).  Defendant Coffman asserts that he was called

17

to E block after Plaintiff caused a disturbance; however, Defendant Coffman denies that he physically assaulted him (Docket No. 39, Exhibit 5, p. 2 of 2).

Plaintiff rests on his pleading in which he asserts allegations that Defendant Cunningham physically threatened him and Defendant Coffman dragged and threw him into a holding cell (Docket No. 14, Exhibit K, p. 3 of 3).  From Plaintiff's description of the events leading up to the alleged assault, Defendants Coffman and Cunningham undertook certain action to resolve a disturbance that posed some risks to Plaintiff's safety and the safety of other inmates and prison staff.  They used force sufficient to maintain prison security and restore order.  No unnecessary and wanton pain and suffering was inflicted as Plaintiff claims that he was shocked, nervous, humiliated and embarrassed by the incident.  Plaintiff does not assert that he was physically harmed or that Defendants' acts were maliciously or sadistically undertaken for the very purpose of causing him physical harm.  Plaintiff has failed to present some type of concrete evidentiary material that the force used by Defendants Coffman and Cunningham exceeds the de minimus use of force prohibited by the Eighth Amendment's prohibition of cruel and unusual punishments.

     **3.**      **Sexual Harassment**.

A claim for sexual harassment implicates a prisoner's Eighth Amendment right against cruel and unusual conduct.  *Vanzant v. McQuiggin*, 2011 WL 130333, *3 (W. D. Mich. 2011).  "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment."  *Id.* (*citing Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).  "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective

18

matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Id.* (*citing Freitas*, 109 F.3d at 1338 (*citing Hudson, supra*, 112 S. Ct. at 999).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *Id.* at *4 (*see Morales v. Mackalm*, 278 F.3d 126, 132 (2nd Cir.2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n. 11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim).

Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *Id.* (*see,*

19

*e.g., Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at * 1 (6th Cir. 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider,* 105 F.3d 857, 859-61 (2nd Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Defendant Pahl averred that he never physically assaulted Plaintiff or had any inappropriate contact with him (Docket No. 39, Exhibit 6, ¶ 5).  Plaintiff insinuates that Defendant Pahl sexually harassed him by watching him shower and use the toilet.  Plaintiff does not allege and there is no evidence that Defendant Pahl made any comments of a sexual nature or had any physical contact with Plaintiff. Assuming as true Plaintiff's allegation that Defendant Pahl watched him shower and use the toilet, this description of Defendant Pahl's conduct does not satisfy the requirement that his conduct constituted an unnecessary and wanton infliction of pain.  Therefore, Plaintiff's allegation against Defendant Pahl does not rise to the level of an Eighth Amendment violation.

   **f.     FOURTEENTH AMENDMENT CLAIM**.

Plaintiff argues that Defendants Steyer, Panuto and/or Thompson interfered with Plaintiff's rights under the equal protection clauses.  They failed to accommodate his religious beliefs by denying him the

20

means to assemble and perform holy Friday prayer.  Christian inmates were permitted to pray up to four times weekly.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 -576 (6th Cir. 2005) (*citing* U.S. Const., amend. XIV, § 1).  Legislation is generally presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.  *Id.* (*citing Schweiker v. Wilson*, 101 S.Ct. 1074, 1080 (1981)).  But when a law adversely affects a "suspect class," such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the law will be sustained only if it is "suitably tailored to serve a compelling state interest." *Id.* (*citing City of Cleburne v. Cleburne Living Center*, 105 S.Ct. 3249, 3254 (1985)).

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" or burdened a fundamental right.  *Midkiff v. Adams County Regional Water District,* 409 F.3d 758, 770 (6th Cir. 2005) (*citing Purisch v. Tennessee Technical University*, 76 F.3d 1414, 1424 (6th Cir. 1996) (citations omitted)). If a protected class or fundamental right is involved, this Court must apply strict scrutiny, but where no suspect class or fundamental right is implicated, this Court must apply rational basis review.  *Id.* (*citing Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000)).  Under rational basis review, the governmental policy at issue "will be afforded a strong presumption of validity and must be upheld as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.' " *Id.* (*quoting Heller v. Doe*, 113 S.Ct. 2637, 2642 (1993)).  Under rational basis review, a plaintiff faces a severe burden and must "negate all possible rational justifications for the distinction." *Id.* (*citing Gean v. Hattaway*, 330 F.3d 758, 771 (6th Cir. 2003); *see also Heller*, *supra*, 113 S.Ct. at 2642).

Defendants claim that the record demonstrates the absence of a genuine issue of materia fact. Since inmates are not a member of a suspect class, Plaintiff cannot sustain a cause of action under the Equal Protection Clause.  In response, Plaintiff does not claim that Muslims were singled out for differential or discretionary treatment.  He claims that similarly situated inmates who follow the Christian faith were given four separate religious services.  Muslim inmates were not.

Construing all evidence in his favor, there are three deficiencies in Plaintiff's attempt at stating a claim under the Equal Protection Clause.  First, the crux of Plaintiff's argument is that he was treated unfairly as an individual.  Plaintiff has failed to allege both membership in a protected class and intentional discrimination against him resulting from his membership in the class.  Second, Plaintiff has not demonstrated that unequal enforcement of the law, if any, was based on his membership in a protected group.  Third, Plaintiff failed to demonstrate that the state's failure to give Muslim inmates three additional religious services weekly implicates a fundamental right or that the failure to provide three additional religious services weekly was motivated by Plaintiff's purported membership in a protected class.

As a matter of law, Plaintiff has failed to make a prima facie case for a violation under the Equal Protection Clause.  Plaintiff's claim must be dismissed.

g.    **Denial of Access to the Court**

The Supreme Court has determined that a prisoner's right to access to the courts includes adequate, effective and meaningful  access to a law library or legal assistance.  *See Bounds v. Smith*, 97 S.Ct. 1491, 1498 (1977).  This right can be satisfied by either providing the inmate with an attorney or other person trained in law or by providing an inmate with legal materials adequate to allow the inmate to pursue an attack on his conviction or sentence. *Pollock v. Lavender,* 2011 WL 2148584, *4 (S. D. Ohio 2011) *citing*

22

*Dunlap v. Strickland*, No. 2:09–CV–100, 2009 WL 2835188, at *2 (S. D. Ohio 2009) (*citing Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)); *see also Knop v. Johnson*, 977 F.2d 996, 1003 n. 5 (6th Cir.1992) ("Our own court, like other courts of appeals, has always understood the Supreme Court to have meant what it said in holding that prisoners must be provided adequate law libraries 'or' adequate assistance from persons with legal training.")).

In order to bring a Section 1983 claim for violation of a prisoner's right of access to the courts, the prisoner must "plead and prove prejudice stemming from the asserted violation." *Kilbane v. Huron County Commissioners,* 2011 WL 1666928, *3 (N. D. Ohio 2011) (*citing Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). That is, the prisoner must demonstrate "actual injury," by showing that his underlying claim was nonfrivolous. *Id.* (*citing Lewis v. Casey*, 116 S.Ct. 2174, 2180 (1996) (reasoning that the "actual injury" requirement means that inmates must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or was being impeded.")). Plaintiff's allegations need not demonstrate that the underlying claim will be successful; instead, deprivation of an "arguable (though not yet established) claim" is sufficient. *Id.* (*citing Lewis*, 116 S. Ct. at 2181, n. 3).

The Magistrate is not persuaded that Plaintiff has been deprived of access to the Court. Since being detained in 2008, Plaintiff has had unfettered access to the Court. He filed a petition for writ of habeas corpus in 2008 (Case No. 1:08 CV 2355), he sued ICE in 2009 (Case No. 3:09 CV 02337) and in 2010, he instituted a Section 1983 case against the Medina County Sheriff (Case No. 4:10 CV 009993). In each case, Plaintiff filed an appeal to the United States Court of Appeal for the Sixth Circuit (Case No. 3:09 CV 02337, Docket No. 7; Case No. 4:10 CV 009993, Docket No. 15; Case No. 1:08 CV 2355, Docket No. 22). In each case, the pleadings suggest that he was able to conduct legal research and communicate his findings to the court.

23

Plaintiff suggests that Defendants interfered with his access to the Court by depriving him of the use of the library for fifteen days during lock down.  His case was further complicated when he was deprived of library use during a period of transition from the jail to the federal detention center.

Plaintiff filed his complaint against ICE on October 8, 2009.  Subsequently, he was placed in lock down for fifteen days.  Apparently in lock down, Plaintiff did not have access to legal information.  At any rate, Plaintiff was not prejudiced or injured by the failure to have access to legal information or assistance during lock down as his case was pending with this Court.  The Court entered a dismissal on November 4, 2009, for the reason that Plaintiff did not assert readily identifiable legal claims pursuant to 28 U. S. C. § 1915A.  Access to legal information for this pending matter would not have altered the result.

Furthermore, the Court acknowledged that the change of addresses from the jail to the detention center disrupted his access to the library.  So that Plaintiff could comply with this Court's April 26, 2010 order requiring him to amend his complaint within thirty days, Plaintiff was granted additional time to file his Amended Complaint.  Even if Plaintiff were denied time in the library during this transition, he was not injured or prejudiced as a result.

Without commenting on the propriety of delaying access to the legal information or legal assistance during lock down, the Magistrate is not persuaded that Plaintiff was denied access during relevant times.  What is more important is that the periods during which he was denied access did not result in loss.  The Magistrate recommends that the Court grant Defendants' request for summary judgment on this issue.

In his Amended Complaint, Plaintiff claims that he was deprived of access to an Ohio appellate court.  Apparently, Plaintiff filed a brief on January 6, 2010 which did not comply with Local Rule 7 of

24

the Ninth District Court of Appeals.  A magistrate's order filed January 8, 2010, set forth clear guidance for complying with the procedural requirements of Local Rule 7.  The appeal was dismissed because Plaintiff failed to follow the map and prepare a new pleading.  The dismissal of the appeal was not the result of Defendants' failure to provide access to the law library or to provide legal assistance.

### h.   CONSPIRACY CLAIMS.

Plaintiff alleges that Defendant Panuto conspired with other Defendants to deny receipt of his medication.  Plaintiff's claims are made under 42 U. S. C. §§ 1983, 1985(3) and 1986.

### 1.   CONSPIRACY UNDER 42 U. S. C. § 1983.

A civil conspiracy claim is cognizable under Section 1983.  *Farhat v. Jopke*, 370 F. 3d 580, 599 (6th Cir. 2004).  A civil conspiracy is defined as an agreement between two or more persons to injure another by unlawful action.  *Hopkins v. Canton City Board of Education*, 2010 WL 2572830, * 10 (N. D. Ohio 2010).  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  *Id.*  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  *Id.*  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.  *Id.* (*citing Collyer v. Darling,* 98 F.3d 211, 229 (6th Cir.1996)(*quoting Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985)).  Conspiracy claims must be pled with specificity.  *Farhat, supra*, 370 F. 3d at 599.  Vague and conclusory allegations that are unsupported by material facts are not sufficient to state a Section 1983 claim.  *Id.*

None of Plaintiff's pleadings, including the Complaint, Amended Complaint, Affidavit and numerous pleadings, contain material facts or allows inferences to support the existence or scope of a conspiracy.  Assuming *arguendo* that Plaintiff's claim is premised on a right or privilege to undergo

25

medical treatment, that right does not cure the deficiencies in failing to establish the presence of a single plan or a specific overt act committed in furtherance of the conspiracy.  Plaintiff's conclusory allegations will not give rise to a claim for conspiracy under Section 1983.

### 2.  CONSPIRACY UNDER 42 U. S. C. § 1985(3).

Section 1985(3) prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."  *Zukowski v. Germain*, 2010 WL 4809329, *4 (S. D. Ohio 2010) (*citing* 42 U.S.C. § 1985(3)).  In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the law; and, (3) an act in furtherance of that conspiracy, (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.  *Id.* (*citing Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir .2005)).

The Sixth Circuit "has adopted the general rule in civil conspiracy actions [brought under 42 U.S.C. § 1985] that a corporation cannot conspire with its own agents or employees."  *Briner v. City of Ontario*, 2010 WL 3982755, at *14 (N. D. Ohio 2010) (*citing Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 509 (6th Cir. 1991)).  The conspiracy must be motivated by racial or other class-based invidiously discriminatory animus.  *Zukowski*, *supra*, 2010 WL 4809329 at * 4.  The failure to allege membership in a protected class, and discrimination based upon such class membership, requires dismissal of any claim under Section 1985(3).  *Id.*

It is clear that conspiracy claims under 42 U.S.C. § 1985 must be pled with the same specificity as conspiracy claims under Section 1983.  *Id.* (*citing Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984); *see also Stewart v. Wilkinson*, No. 2:03-CV-0687, 2008 WL 2674843, at *10 (S. D. Ohio 2008)).  Vague

26

and conclusory allegations unsupported by material facts are not sufficient to state a conspiracy claim. *Id.*

Without addressing the issue of whether Defendants could even legally "conspire" against Plaintiff in view of the fact that they were all employed by the same entity, the Court finds that Plaintiff's conspiracy claim under Section 1983 is deficient. The fact that Plaintiff alleges a conspiracy does not mitigate his failure to demonstrate that he is a member of a discrete minority identified by race, national origin or gender and that he was intended to receive special protection under the Constitution. Failure to allege membership in a protected class and discrimination based on that membership alone must result in dismissal of Plaintiff's claim under Section 1985(3).

3. **CONSPIRACY UNDER 42 U. S. C. § 1986.**

Section 1986 provides a cause of action against persons "who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed." *Slough v. Telb*, 644 F. Supp.2d 978, 995 (N. D. Ohio 2009)(*citing* 42 U.S.C. § 1986). A Section 1986 claim is derivative of, and predicated on the violation of, Section 1985; as such, a Section 1986 violation cannot be established unless a Section 1985 violation has first been established. *Id.* (*citing Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998)).

Plaintiff cannot establish a violation of 42 U.S.C. § 1986, as Plaintiff has failed to sufficiently state a claim for violation of 42 U.S.C. § 1985. The Magistrate recommends that the Court dismiss this claim.

E. **PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.**

Plaintiff reasserts the following claims against Defendants in their individual capacities:

27

- • Defendants Steyer, Panuto and Thompson deprived him of the rights secured by the First Amendment.
- • Defendant Clouse was deliberately indifferent to providing him the appropriate medication.
- • Defendant Panuto conspired with other officers at the jail to deny his medication.
- • Defendant Thompson denied him access to the courts.
- • Defendant Clouse failed to provide him with medication
- • Defendant Cunningham threatened him subjecting him to cruel and unusual punishment.
- • Defendant Coffman physically attacked him.
- • Defendant Pahl engaged in sexual misconduct.

Defendants argue that as a matter of law, they were performing discretionary duties that are shielded from liability in Section 1983 damages suit.

### 1.  QUALIFIED IMMUNITY STANDARD OF REVIEW.

A state employee is entitled to qualified immunity if his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir. 2010) (*citing Dorsey v. Barber*, 517 F. 3d 389, 394 (6th Cir. 2008)). A two-part test is used to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id.* (*citing Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)).  For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Id.* (*citing Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009)).  To prove that a right was clearly established a claimant can draw from either Supreme Court precedent, precedent from this court, or cases from other courts which "point unmistakably to the unconstitutionality of the conduct and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Mumford v. Zieba*, 4 F.3d 429, 432–433 (6th Cir. 1993).

### a.  First Amendment.

28

The threshold inquiry for this Court is whether Plaintiff's allegations, if true, establish a constitutional violation, the contours of which are defined at the time of the alleged violation. Then, the Court must assess whether a reasonable official would have known that his or her actions violated Plaintiff's constitutional rights. To the extent that Plaintiff never demonstrated that he had a clearly established constitutionally protected right to worship without limitations, Defendants Steyer, Panuto and Thompson are entitled to qualified immunity.

   **b.    Deliberate Indifference and Failure to Provide Medication**.

   In the instant case, the parties acknowledge that the failure to address a serious medical need arises to the level of a constitutional violation where both objective and subjective components are met. Further, the parties do not dispute that Plaintiff's medical needs were sufficiently serious. The parties differ, however, with respect to Plaintiff's satisfaction of the "subjective" requirement of her claim. Defendant Clouse contends that she was aware of the serious risks. It is unrefuted that she reasonably responded to the substantial risks to health by arranging an alternate medication delivery system to address Plaintiff's medical needs. She neither was deliberately indifferent to Plaintiff's serious medical needs nor did she fail to provide medication. Plaintiff has failed to establish a constitutional violation; consequently, Defendant Clouse is entitled to qualified immunity on the claims that she was deliberately indifferent to Plaintiff's medical needs and she failed to provide medication.

   **c.    Conspiracy Claims**.

   Having concluded that Plaintiff cannot establish the elements necessary to state a claim of civil conspiracy under Sections 1983, 1985 (6) and 1986, the Magistrates notes that the subjective component of the qualified immunity test cannot be met. The law on this issue indicates that Defendant Panuto and all other Defendants who are employed by the same entity cannot conspire with each other to deprive

Plaintiff of his constitutional rights. Even if Plaintiff's allegations are true, he cannot draw from Supreme Court precedent, precedent from this court, or cases from other courts which would bolster a conclusion that a constitutional violation occurred. Defendant Panuto is entitled to qualified immunity.

**d.    Access to the Courts**.

It is well established that prisoners have a constitutional right to access the courts. Plaintiff has not demonstrated that Defendant Thompson performed unjustified acts or conditions that hindered his ability to file a non-frivolous legal claim. Since Plaintiff cannot sustain a claim that constitutional right has been violated, Defendant Thompson is entitled to qualified immunity.

**e.    Cruel and Unusual Punishment.**

At the time of the alleged constitutional violation, there was a binding precedent that the Eighth Amendment's prohibition of cruel and unusual punishments excludes from constitutional recognition, de minimis uses of physical force used by prison guards to maintain safety and order. The absence of serious injury or violence removes the act from relevant Eighth Amendment inquiry. Plaintiff failed to show that the verbal threat made by Defendant Cunningham was sufficiently serious or that he was injured as a result. Considering the allegations in a light most favorable to Plaintiff, a constitutional right has not been violated. Defendant Cunningham is entitled to qualified immunity.

Plaintiff's right to be free of assault at the hands of Defendant Coffman is unquestionably clearly established. However, the Supreme Court has also determined that prison officials may use force to maintain or restore discipline. The physical force used to remove Plaintiff from a potentially explosive environment was uncomfortable but it was not force of a sort that was objectively harmful enough to establish a constitutional violation. Defendant Coffman is entitled to qualified immunity for allegations of assault.

30

**f.      Sexual Assault**

A prisoner's right to be free from sexual assault was a clearly established right prior to the time of the alleged abuse.  Thus it was clearly established that Defendant Pahl could be held liable for sexually assaulting Plaintiff.  Construing the facts as true, Defendant Pahl watched Plaintiff shower and use the toilet without evidence of any contact or comments of a sexual nature.  Plaintiff does not assert or demonstrate the fundamental physical or psychological harm which amounts to a violation of the Eighth Amendment.  Defendant Pahl is entitled to qualified immunity.

### VIII. CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Court:

1.      Grant Defendants' Motion for Summary Judgment (Docket No. 39).
2.      Deny as moot, the Motions to Proceed In Forma Pauperis (Docket Nod. 52, 58 & 60).
3.      Deny the Motion to Reconsider Appointment of Counsel (Docket No. 53).
4.      Deny the Motion to Subpena [sic] Records (Docket No. 57).
5.      Dismiss the case.
6.      Terminate the referral to the undersigned Magistrate Judge.


                                        /s/Vernelis K. Armstrong
                                        United States Magistrate Judge


Date:   June 30, 2011

### IX. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.

The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.